STATE OF NORTH CAROLINA v. WILLIAM ELLIS CHILDERS

STATE OF NORTH CAROLINA v. GLENN THOMPSON

No. 856SC943

(Filed 15 April 1986)

1. **False Pretense § 2.1 — indictment — causal connection between false representation and victims' payment of money — allegations sufficient**

    There was no merit to one defendant's contention that the bills of indictment were fatally defective because they did not state a causal connection between the alleged false representation by defendant and the payment of money by the victims, since the indictments made it clear that defendants obtained money as a result of their misrepresentations that termites were present and that they would provide the treatments necessary to exterminate them.

2. **False Pretense § 3.1 — need for termite treatments — obtaining money from homeowners by false pretense — sufficiency of evidence**

    In a prosecution of defendants for obtaining money by false pretense, evidence was sufficient to be submitted to the jury where it tended to show that defendants falsely represented to each of four homeowners that active infestations of termites were present in their homes and that treatment therefor was necessary when in fact no active termite infestations were present; one defendant testified that there were no signs of active termite infestations at any of the houses, although there were signs of old infestations at two of the houses; this testimony supported a reasonable inference that defendant knew that his representations with respect to the presence of active termite infestations were false and that he made these representations in order to induce the

State v. Childers and State v. Thompson

respective homeowners to pay for termite treatments which were unnecessary; defendants misrepresented the nature of the treatment which was actually provided; and each of the homeowners was actually deceived by defendants' false representations.

**3. False Pretense § 3— evidence of previous similar transactions by defendant— admissibility to show motive**

In a prosecution of defendants for obtaining money by false pretense where the evidence tended to show that defendants obtained money from elderly homeowners by falsely representing that their homes needed treatment for active termite infestations, the trial court did not err in permitting cross-examination of one defendant concerning previous transactions with other elderly homeowners, since evidence with respect to other similar transactions in which defendant had engaged as an employee of an exterminating company was relevant to show motive, intent, plan and knowledge. N.C.G.S. 8C-1, Rule 404(b).

**4. Criminal Law § 92.4— multiple charges against same defendant—consolidation proper**

The trial court did not err in joining for trial four cases against defendant for obtaining money by false pretense since each of the charges was transactionally connected in that they each involved a similar modus operandi and similarities in time, location and in the victims' ages, economic circumstances and literacy, and the trial court could properly find them indicative of a single scheme or plan to defraud elderly homeowners under the pretext of performing unnecessary insect extermination services.

**5. Criminal Law § 92.1— two defendants charged with same offense—consolidation proper**

The trial court did not abuse its discretion in consolidating for trial charges against two defendants for obtaining money by false pretense.

**6. Criminal Law § 101— prosecuting witness's conversation with jurors—no mistrial**

Defendant failed to show that he was prejudiced by casual conversations unrelated to the case between one of the prosecuting witnesses and two jurors, and he failed to show that the trial court abused its discretion in denying his motion for mistrial.

**7. Criminal Law § 99.8— court's examination of witness—no expression of opinion**

There was no merit to defendant's contention that the trial court impermissibly expressed an opinion in questioning one of the State's witnesses, since the court made it clear that the questions were for the purpose of clarifying the witness's testimony.

**8. Criminal Law § 9.3— defendant as aider and abettor—sufficiency of evidence**

In a prosecution for obtaining money by false pretense where the evidence tended to show that defendants obtained money from elderly homeowners after falsely representing that the homes needed treatment for active termite infestations, evidence was sufficient to permit a reasonable in-

ference to be drawn that one defendant, by his presence and participation in the initial termite inspections and subsequent spray treatments, assisted the other defendant in the perpetration of the false pretense upon each of the homeowners, and the issue of defendant's guilt as an aider and abettor was properly submitted to the jury.

**9. Criminal Law § 102— multiple defendants—offer of evidence—right to closing argument**

There was no merit to one defendant's contention that, because he presented no evidence and objected to joinder of his cases with those of the other defendant, he should have been permitted to make the last argument to the jury, since Rule 10, General Rules of Practice for the Superior and District Courts provides that ". . . where there are multiple defendants, if any defendant introduces evidence the closing argument shall belong to the solicitor."

APPEAL by defendants from *Stephens, Judge.* Judgment entered 8 March 1985 in HERTFORD County Superior Court. Heard in the Court of Appeals 15 January 1986.

Defendants were tried jointly on bills of indictment charging each of them with four counts of obtaining money by false pretense in violation of G.S. 14-100. The bills of indictment allege that defendants intentionally defrauded four elderly homeowners in connection with the rendering of termite extermination services on 24 and 25 May 1984 and 19 June 1984. A jury found defendants guilty of all charges. From judgments entered on the verdicts, both defendants appeal.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Alan S. Hirsch for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr. by Assistant Appellate Defender Louis D. Bilionis for defendant Childers.*

*Cherry, Cherry, Flythe and Overton by Joseph J. Flythe for defendant appellant Thompson.*

MARTIN, Judge.

Both defendants bring forward several assignments of error relating to the conduct of the trial. Since each defendant has raised different issues on appeal, we will address their appeals separately. We find no prejudicial error as to either defendant.

I

THE EVIDENCE

The State offered evidence tending to show that defendant Thompson owned and operated Sun Exterminating Company and that defendant Childers was employed as a salesman for the company. On 24 May 1984, defendants went to the home of Tommy Peel. Defendant Childers offered Mr. Peel a free termite inspection and defendant Thompson went under Mr. Peel's house. When he came out from beneath the house, he brought a piece of a board and handed it to Childers. Childers examined the board and told Mr. Peel that there were termites underneath the house and "They'll eat your house up." After some negotiations, Childers offered to treat the house for termites for $250.00. After Mr. Peel paid Childers, Thompson sprayed beneath the house. Childers provided Mr. Peel, who does not read very well, with a written contract showing that the treatment rendered was for powder post beetles.

On the same day, defendants went to the home of Booker Lee. After a similar "free inspection," Mr. Lee was informed that his house was infested by termites. He paid defendants $150.00 to treat the premises. Childers told Mr. Lee that an additional treatment would be necessary. However, when Childers called Mr. Lee to make arrangements for the additional treatment, Mr. Lee declined because he was unable to pay for it.

On or about 25 May 1984, defendants went to James Eason's residence and offered a free termite inspection. After Thompson inspected the house, Childers told Mr. Eason that the house needed to be sprayed for termites. Mr. Eason agreed to pay $400.00 for the termite treatment. After defendants completed the treatment, Childers gave Mr. Eason a written contract specifying that treatment had been rendered for powder post beetles instead of termites. Mr. Eason cannot read. Sometime later, Childers called Mr. Eason and told him that the house had not been treated for termites and that a termite treatment would require an additional fee. Mr. Eason's daughter then contacted defendant Thompson and, as a result, Thompson returned to the Eason home and provided the additional treatment at no additional cost.

On 19 June 1984 defendants went to the home of Floyd Anderson and, after a free inspection, told him that his house had termites. Mr. Anderson paid Childers $775.00 for termite treatment and received a written contract. Defendant Thompson sprayed beneath the house. Mr. Anderson cannot read or write.

The State also offered the testimony of Bennie C. Griffin, a pest control inspector with the North Carolina Department of Agriculture. Mr. Griffin inspected each of the four houses in July 1984. He found no evidence of termites in Tommy Peel's house, nor did he find any evidence that termite treatment had been rendered. He found evidence of an old powder post beetle infestation, but in his opinion there had not been an active infestation in May 1984. Inspections of the Lee and Anderson homes revealed no evidence of active or recent termite or powder post beetle infestations, although there were indications of past infestations at both houses. Upon inspecting James Eason's home, Mr. Griffin found that it had been treated for powder post beetles and for termites. However, Mr. Griffin found no evidence that termites had ever been present and, in his opinion, powder post beetles had not been present in May 1984.

Defendant Thompson did not testify or offer evidence. Defendant Childers testified that Thompson was the owner of Sun Exterminating Company and that Thompson had performed the inspections and rendered the treatment at each of the four homes. Childers also testified that each of the four homes showed signs of active powder post beetle infestations and that he sold only powder post beetle treatment to those homeowners. Two additional witnesses testified concerning transactions which they had had with defendants; both were satisfied with the exterminating work. Another witness, Calvin Bryant, corroborated defendant Childers' testimony with respect to the transaction with Floyd Anderson.

II

APPEAL OF WILLIAM ELLIS CHILDERS

[1] Defendant Childers contends that the bills of indictment are fatally defective because they do not state a causal connection between the alleged false representations by defendant and the payment of money by the victims. We find the indictments sufficient.

A bill of indictment must allege "facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." G.S. 15A-924 (a)(5). With respect to a bill of indictment for obtaining property by false pretense, there must be allegations sufficient to state a causal connection between the alleged false representation and the obtaining of the property or money. *State v. Whedbee*, 152 N.C. 770, 67 S.E. 60 (1910). However, no particular form of allegation is required; an allegation that the money or property was obtained "by means of a false pretense" is sufficient to allege the causal connection where the facts alleged are adequate to make clear that the delivery of the property was the result of the false representation. *State v. Dale*, 218 N.C. 625, 12 S.E. 2d 556 (1940); *State v. Claudius*, 164 N.C. 521, 80 S.E. 261 (1913).

Each of the indictments alleged that defendant obtained a specified sum of money from the victim "by means of a false pretense." The false pretense was thereafter more fully described as:

The said defendant requested of the said [homeowner] to inspect his house for termites and following such inspections stated to the said [homeowner] that there were termites under his house and that he, the said defendant, would spray and treat the said termites for the payment of [specified amount] from the said [homeowner]. . . . That at the time the said defendant told [homeowner] that he would spray and treat his house for termites he, the said defendant, knew in fact that such treatment was not for the purpose of termites. . . .

While perhaps not artfully drawn, the bills of indictment make clear that defendants obtained money as a result of their misrepresentations that termites were present and that they would provide the treatments necessary to exterminate them. This assignment of error is overruled.

[2] Defendant Childers next contends that the trial court erred in denying his motions to dismiss, post verdict motions and post trial motions, all made upon grounds that the evidence was insufficient to support his convictions. He contends that the evidence fails to show that his representations to the four homeowners,

that their homes were in need of treatment for termites, were false or that he knew the representations were false.

The standard by which the sufficiency of the evidence in a criminal case is measured is whether there is substantial evidence of each material element of the offense. *State v. Myrick*, 306 N.C. 110, 291 S.E. 2d 577 (1982). The evidence is to be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). All of the evidence favorable to the State, including that offered by defendant, is taken into consideration. If the evidence, when so viewed, allows a reasonable inference to be drawn as to defendant's guilt, it is sufficient. *Id.*

The elements of the crime of obtaining property by false pretense, as defined by G.S. 14-100, are "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980). Viewed in the light most favorable to the State, the evidence permits a reasonable inference that defendants falsely represented to each of the four homeowners that active infestations of termites were present in their homes and that treatment therefor was necessary, when in fact no active termite infestations were present. Defendant Childers testified that there were no signs of active termite infestations at any of the houses, although there were signs of old infestations at the Eason and Lee homes. His testimony supports a reasonable inference that he knew that his representations with respect to the presence of active termite infestations were false and that he made these representations in order to induce the respective homeowners to pay for termite treatments which were unnecessary. In addition, the evidence supports a reasonable inference that defendants misrepresented the nature of the treatment which was actually provided. That each of the homeowners was actually deceived by defendants' false representations is clear. We hold that the evidence was sufficient to overcome defendant Childers' motions.

In related assignments of error, defendant contends that the trial court erred in submitting the cases to the jury on theories

unsupported in the bills of indictment and that the evidence with respect to the Anderson and Peel cases was insufficient when viewed in terms of the allegations of the indictments. We find no merit in either of these contentions. The trial court's instructions permitted the jury to find defendant guilty if the State proved, beyond a reasonable doubt, that defendant falsely represented to the homeowner the presence of an active termite infestation and the necessity for treatment, and falsely represented the nature of the treatment provided, with knowledge that the representations were false and with the intent to deceive the homeowner, and that defendant obtained money from the homeowner by actually deceiving him by the false representation. This is precisely the theory alleged in each of the bills of indictment and, as previously discussed, is supported by the evidence in each case. Although the indictments contained additional factual allegations, they were not necessary elements of the offenses charged and were therefore not necessary to be proved. *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978). These assignments of error are overruled.

[3] By his final assignment of error, defendant Childers contends that the trial court erred in permitting the District Attorney to cross-examine him concerning previous transactions with other elderly homeowners. Defendant contends that the questions amounted to an impermissible attack on his credibility, prohibited by G.S. 8C-1, Rule 608(b). In our view, evidence with respect to other similar transactions in which defendant had engaged as an employee of Sun Exterminating Company was relevant to show motive, intent, plan and knowledge and was a generally permissible inquiry pursuant to G.S. 8C-1, Rule 404(b). In his brief, however, defendant specifically addresses one question which the District Attorney asked him concerning his flight from a home where he had solicited business and his subsequent apprehension by police officers. The record reflects that no objection was made to the question nor was any exception noted in the record. Defendant has therefore waived his right to raise the issue on appeal. G.S. 8C-1, Rule 103; N.C. R. App. P. 10(b)(1).

III

APPEAL OF GLENN THOMPSON

By his first assignment of error, defendant Thompson contends that the trial court erred in joining the four charges against

---

---

him for trial and in consolidating his cases with those of defendant Childers. We find no error in either respect.

[4]   G.S. 15A-926(a) permits joinder of offenses for trial when the offenses are based "on a series of acts or transactions connected together. . . ." Each of the four charges against defendant Thompson was transactionally connected in that they each involved a similar *modus operandi* and similarities in the victims' ages, economic circumstances and literacy. Other similar circumstances existed as to time and location. Considering these circumstances, the trial court could properly find them indicative of a single scheme or plan to defraud elderly homeowners under the pretext of performing unnecessary insect extermination services. Thus, we find no abuse of the trial court's discretion in permitting the offenses to be joined. *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981); *State v. Neal*, 76 N.C. App. 518, 333 S.E. 2d 538 (1985), *disc. rev. denied*, 315 N.C. 394, 338 S.E. 2d 884 (1986).

[5]   Charges against multiple defendants may be joined for trial, pursuant to G.S. 15A-926(b)(2), when each defendant is charged with accountability for each offense, or when the several offenses were part of a common scheme or plan. "[W]here there are two indictments in which both defendants are charged with the same crimes, then they may be consolidated for trial in the discretion of the court." *State v. Mitchell*, 288 N.C. 360, 364, 218 S.E. 2d 332, 335 (1975), *death sentence vacated*, 428 U.S. 904, 96 S.Ct. 3209, 49 L.Ed. 2d 1210 (1976). The court's ruling is not reviewable on appeal absent a showing of abuse of discretion. *State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912 (1981). Defendant Thompson has not shown, nor has he argued, that the trial court abused its discretion.

[6]   Defendant Thompson next assigns error to the court's denial of his motion for mistrial due to alleged juror misconduct. During the course of the trial, one of the prosecuting witnesses, Booker Lee, was observed conversing with two jurors on separate occasions during recesses. After each occurrence, the court conducted an inquiry and determined that the contact was casual and not related to the case.

Where juror misconduct is alleged, it is the duty of the trial judge to investigate the matter and to make such inquiry as is appropriate under the circumstances. *State v. Jackson*, 77 N.C. App.

491, 335 S.E. 2d 903 (1985). The court's determination of whether misconduct has occurred, and if so, whether it is prejudicial, will not be disturbed on appeal unless the ruling is clearly an abuse of discretion. *Id.* Defendant Thompson has failed to show that he was prejudiced by the casual conversation between Booker Lee and either of the jurors, or that the trial court abused its discretion in denying the motion for mistrial.

[7] Defendant Thompson also contends that the trial court impermissibly expressed an opinion in questioning the State's witness, Bennie Griffin. We disagree. The court prefaced its questions by saying that the questions were for the purpose of clarifying the witness's previous testimony. The court explained that it had not understood the previous testimony and provided counsel an opportunity to examine Mr. Griffin further concerning his responses to the court's questions. It is well settled in this State that the trial court may ask a witness questions in order to clarify confusing testimony, so long as the court does not intimate an opinion as to a factual issue, the defendant's guilt, or the weight or credibility of the evidence. *State v. Blackstock*, 314 N.C. 232, 333 S.E. 2d 245 (1985). We discern no such expression of opinion from the questions asked by the trial court.

[8] By his next assignment of error, defendant Thompson contends that the evidence was insufficient to support his convictions as an aider and abettor to defendant Childers. He argues that the evidence shows only that he was present and conducted the initial inspections and the subsequent spraying, all at Childers' direction. We deem it unnecessary to repeat the evidence or the test by which the sufficiency of the evidence is measured, which we discussed in our consideration of defendant Childers' appeal. Suffice it to say that the evidence permits a reasonable inference to be drawn that defendant Thompson, by his presence and his participation in the initial termite inspections and subsequent spray treatments, assisted defendant Childers in the perpetration of the false pretense upon each of the four homeowners. The issue of his guilt as an aider and abettor was properly submitted to the jury.

Defendant Thompson also contends that the trial court committed reversible error in its jury instructions by misstating a contention of fact unsupported by the evidence. We note that defendant failed to object at trial and has, therefore, failed to

preserve the exception for review. N.C. R. App. P. 10(b)(2). In our discretion, however, we have reviewed the court's instruction and find that the portion of the charge to which defendant excepts was a correct statement, contained in the final mandate, of the elements which the State was required to prove in order to warrant a conviction. This assignment of error is overruled.

**[9]** Defendant Thompson finally contends that because he presented no evidence and objected to joinder of his cases with those of defendant Childers, he should have been permitted to make the last argument to the jury. Rule 10, General Rules of Practice for the Superior and District Courts, provides: "In a criminal case, where there are multiple defendants, if any defendant introduces evidence the closing argument shall belong to the solicitor." Defendant Childers offered evidence, therefore the State was entitled to conclude the arguments. *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976).

IV

CONCLUSION

We conclude that each of the defendants received a fair trial, free from prejudicial error.

No error.

Judges EAGLES and COZORT concur.