STATE OF NORTH CAROLINA, Plaintiff v. KENYATTA APPLEWHITE, Defendant

No. COA96-1433

(Filed 18 November 1997)

**1. Robbery § 85 (NCI4th)— attempted armed robbery—sufficient evidence**

There was sufficient evidence of the elements of intent to deprive another of personal property and an overt act calculated to carry out that intent to support defendant's conviction of attempted armed robbery where the evidence tended to show that defendant pointed a gun at the victim and ordered him to get down and empty his pockets, and that as the victim tried to comply, he was shot by another person and then by defendant.

**2. Criminal Law § 876 (NCI4th Rev.)— instructions—deliberate and reach unanimous verdict—not plain error**

The trial court's instruction to the jury before it retired to deliberate that the jurors "must talk it over, deliberate, and reach a unanimous verdict" did not coerce a verdict and was not plain error.

**3. Criminal Law § 898 (NCI4th Rev.)— instructions—reference to "God's justice"—not plain error**

The trial court did not commit plain error by its reference in the instructions to "God's justice."

**4. Criminal Law § 1095 (NCI4th Rev.)— structured sentencing—aggravating factor—failure to assist wounded victim**

The trial court did not err by finding as a statutory aggravating factor for attempted armed robbery and assault with a deadly weapon inflicting serious injury that defendant failed to assist the victim to save his life after the victim was shot and near death since (1) defendant's abandonment of the victim was not an element of either offense, and (2) this factor is reasonably related to the purposes of sentencing.

**5. Criminal Law § 1097 (NCI4th Rev.)— structured sentencing—mitigating factor—community support system—finding not required**

The trial court did not err by failing to find the statutory mitigating factor that "defendant has a support system in the community" where the evidence showed only that defendant's sister and a friend live in the same community as defendant. N.C.G.S. § 15A-1340.16(e)(18).

**6. Criminal Law § 1457 (NCI4th Rev.)— restitution—failure to preserve issue for appeal**

Defendant failed to preserve for appeal the issue of the trial court's recommendation that defendant make restitution to certain entities for specified amounts as a condition of post-release supervision where the prosecutor tendered a list of medical expenses incurred by the victim after being shot by defendant; the trial court read the list aloud in open court; and defense counsel stated that he had no comment about the court's recommendation for restitution and made no objection to the entry of the recommendation.

Appeal by defendant from judgments entered 31 July 1996 by Judge Paul M. Wright in Wayne County Superior Court. Heard in the Court of Appeals 27 August 1997.

STATE v. APPLEWHITE

[127 N.C. App. 677 (1997)]

*Attorney General Michael F. Easley, by Assistant Attorney General Sylvia Thibaut, for the State-appellee.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

LEWIS, Judge.

Defendant was indicted for attempted armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. He pled not guilty to both charges. A jury found defendant guilty of attempted armed robbery and of the lesser included offense of assault with a deadly weapon inflicting serious injury. We find no error.

On the night of 29 September 1995, Carl Darby was standing on a footpath running through the VIP Trailer Park in Goldsboro. Three men approached. Darby testified that one of these men was defendant, whom Darby had seen several times before at the trailer park and knew by the nickname "Yatt Yatt."

Darby testified that as he began to walk away, defendant pointed a gun at him and told him not to move. Another man grabbed Darby from behind and also pulled a gun on him. Defendant told Darby to get on the ground and empty his pockets. Before Darby could comply he was shot in the back and in the chest. At the time, defendant was the only person in front of Darby with a gun drawn. The gunshots knocked Darby to the ground and defendant and the others fled.

A passerby drove Darby to Wayne Memorial Hospital, where he was treated for internal bleeding and a collapsed lung. Darby told the responding officer his assailant's name was "Yatt Yatt" and described him. He also correctly provided the address of the defendant's sister Pam, whom Darby said lived in the same trailer park where the shooting occurred. Darby later picked out defendant's picture from a lineup.

Defendant's sister testified she was not outside when the shooting occurred, but that when she walked out the door of her trailer to see what had happened, defendant ran up with her son and told her to get back in the house because there was shooting. Defendant's friend Tracy Kornegay, who is the neighbor and best friend of defendant's sister, testified that when Darby was shot, defendant was standing in the yard of his sister's trailer.

Upon defendant's conviction, the trial court determined that defendant's prior record level was Level 1, found aggravating and mitigating sentencing factors in each case, entered judgment and commitment, and imposed a 69-month minimum term of imprisonment in the attempted robbery case and a consecutive 31-month minimum term of imprisonment in the assault case.

**[1]** Defendant first argues that his motion to dismiss the attempted armed robbery charge should have been granted because there was insufficient evidence of two elements of the crime: (1) intent to deprive another of personal property, and (2) an overt act calculated to carry out that intent. *See State v. Allison,* 319 N.C. 92, 96, 352 S.E.2d 420, 423 (1987). We disagree.

A motion to dismiss for insufficient evidence should be denied if there is substantial evidence of each element of the crime. *State v. Roddey,* 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Substantial evidence is such relevant evidence as a reasonable mind might find sufficient to support a conclusion. *Id.*

The victim Darby testified that defendant pulled a gun from under his shirt, pointed it at Darby, and told him to "get down" and "empty [his] pockets." As Darby tried to comply he was shot twice—first by the male standing behind him, then by defendant. This evidence is substantial enough for a reasonable person to conclude that defendant intended to rob Darby, and that he committed overt acts to further that intent: pointing a gun at Darby and ordering him to get down and empty his pockets.

**[2]** Defendant's next two assignments of error pertain to the instructions given to the jury by the trial court. Before the jury retired to deliberate, the trial court instructed, *inter alia:*

> It is your exclusive province. It's your job to find the true facts of this case and to render a verdict reflecting the truth as you find it.
>
> . . . I instruct you that a verdict is not a verdict until all twelve of you agree unanimously as to what your decision shall be. You cannot render a verdict by some other means, such as a majority vote, flipping a coin, or anything like that. *You must talk it over, deliberate, and reach a unanimous verdict.*

(emphasis added). Defendant made no objection to this instruction during trial but now argues it was plain error because it coerced a unanimous verdict.

A jury instruction is plainly erroneous if it can be fairly said that it probably impacted the jury's finding of guilty. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Our state's Supreme Court has stressed that an improper instruction will rarely justify reversing a criminal conviction when no objection was made in the trial court. *Id.* at 661, 300 S.E.2d at 318. After reviewing the entire record, we cannot say the judge's charge that the jurors "must talk it over, deliberate, and reach a unanimous verdict" was an error so grave that it probably impacted the jury's verdict.

Darby testified that defendant was the person who accosted him with a gun, ordered him to drop to the ground and empty his pockets, and shot him. When Darby was interviewed just after the shooting he identified his assailant by defendant's nickname and gave the address of his assailant's sister. The officer drove to this address and spoke with defendant's sister, who admitted she knew "Yatt Yatt." Darby's later, more detailed description of his assailant was read into evidence for the jury to compare with defendant.

After telling the jurors they "must . . . deliberate and reach a unanimous verdict," the judge asked counsel for the State and defendant if they had anything else to say, and neither did. During more than three hours of deliberations, the jury was twice called back into court and asked whether a verdict had been reached. The foreman responded "No" but indicated they were making progress. The judge sent the jury back without saying anything that might pressure the jury into reaching a verdict. To the contrary, the judge told the jurors, "There's no hurry." At no time did the foreman indicate the jury was having special problems in its deliberations. After the jury announced its unanimous verdicts of guilty, jurors were polled individually and all affirmed their acquiescence in the verdict. On this record, we find no plain error in the court's instruction that the jury "must . . . reach a unanimous verdict."

Defendant argues the instructions in this case are similar to those found to be grounds for reversal in *State v. Smith*, 320 N.C. 404, 358 S.E.2d 329 (1987), and *State v. Parker*, 29 N.C. App. 413, 224 S.E.2d 280 (1976). These cases are distinguishable.

In *Smith*, the jury had been deliberating the sentence in a first degree murder case for over three hours when it inquired about the consequences of its failure to reach a unanimous verdict. 320 N.C. at 422, 358 S.E.2d at 339. The trial court replied by repeating that the jurors needed to confer together without violating individual judg-

ments and that "the decision you reach must be unanimous." *Id.* at 420, 358 S.E.2d at 338. The Supreme Court held that the instruction in response to the jury inquiry was plain error because it probably resulted in coerced unanimity. *Id.* at 422, 358 S.E.2d at 339. However, the Court stressed that its holding rested on the fact that the defective instruction was in response to an inquiry clearly indicating dissent among the jurors. "*[I]n the context of the jury's inquiry,*" the Court emphasized, "the instructions were probably misleading and probably resulted in coerced unanimity." *Id.*

In this case, the jury made no similar inquiry, and the trial court gave no instruction during jury deliberations that could be construed as coercing a unanimous verdict. That the jury took over three hours to weigh the evidence and reach a decision does not by itself indicate that unanimity was probably coerced by the charge the jury was given before retiring to deliberate.

Nor is *State v. Parker* controlling. The *Parker* Court held that the challenged instruction regarding a unanimous verdict was "sufficiently *prejudicial* to require a new trial" (emphasis added). 413 N.C. App. at 414, 224 S.E.2d at 281. In the instant case we review the judge's instruction by the standard of plain error, not prejudicial error. We cannot say that the challenged instruction in this case *probably* impacted the jury's finding of guilt.

[3] Defendant argues that another portion of the trial court's charge to the jury was plain error, in that it violated the Establishment Clause. There was no objection when the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, the highest aim of every trial that's ever been conducted in our country is the ascertainment of truth. Where truth is, God's justice steps in garbed in its robes and tips the scales.

It would have been better had the trial court not mentioned the Supreme Being in its charge to the jury. We note, however, that virtually every witness is administered an oath ending with the words, "so help you God," and this is not held to taint such evidence as is thereafter adduced. In any event, the trial court's use of the phrase "God's justice" is hardly a sufficient basis for a finding of plain error, and we find none here.

[4] Defendant's next assignments of error pertain to the trial court's finding of the following nonstatutory aggravating factor in both

cases: "After shooting the victim who was injured near the point of death, the defendant left the victim without rendering any assistance to save life."

Defendant argues that evidence necessary to prove the elements of his offenses was used to prove the above aggravating factor, in violation of N.C. Gen. Stat. § 15A-1340.16(d) (Cum. Supp. 1996). A similar aggravating factor was upheld in *State v. Reeb*, 331 N.C. 159, 415 S.E.2d 362 (1992), and we find *Reeb* to be controlling. As the Supreme Court noted, "[I]t was the leaving of the defendants which was the gravamen of the aggravating factor. This factor is not inherent in the crime [of assault with a deadly weapon with intent to kill inflicting serious injury]." *Id.* at 181, 415 S.E.2d at 374. In this case, defendant's abandoning his victim, who had been shot twice and was lying on the ground, was not an element of either offense of which he was convicted. Evidence used to prove this conduct by the defendant was not necessary to prove either of his offenses, and so defendant's argument must fail.

Defendant also contends that the above aggravating factor is not reasonably related to the purposes of sentencing, and therefore violates G.S. § 15A-1340.16(d)(20). The Supreme Court in *Reeb* found a similar aggravating factor to be reasonably related to the purposes of sentencing, where the defendant was convicted of assault with a deadly weapon with intent to kill inflicting serious injury. *Reeb*, 331 N.C. at 182, 415 S.E.2d at 375. Once again we find *Reeb* controlling, and we find no error.

We have considered defendant's remaining assignment of error regarding the above aggravating factor and find it unpersuasive.

[5] Next, defendant argues that the trial court erred by failing to find the statutory mitigating factor that "defendant has a support system in the community." N.C. Gen. Stat. § 15A-1340.16(e)(18) (Cum. Supp. 1996). Defendant neither requested this factor nor objected to the trial court's failure to find it.

Defendant must prove the existence of a mitigating factor by a preponderance of the evidence, and the trial court must find a statutory mitigating factor only if the evidence supporting it is substantial, uncontradicted, and manifestly credible. *State v. Jones*, 309 N.C. 214, 219-20, 306 S.E.2d 451, 454-55 (1983).

At the sentencing hearing, defendant's mother and first cousin did announce their presence in support of defendant; however, both

live in Virginia. The record discloses only two people in Goldsboro who could possibly function as a "support system" for defendant: his sister, Pam, and his friend, Tracy Kornegay. The fact that these two people live in the same community as defendant, standing alone, does not mandate a finding that defendant has a support system in the community. The trial court's failure to find this factor in mitigation was without error.

[6] Finally, defendant argues that the trial court's restitution recommendation must be vacated because it is not supported by the evidence.

At the sentencing hearing the prosecutor in open court requested the entry of an order for restitution in the amount of $11,256.29, to cover the medical expenses of treating defendant's victim. The prosecutor tendered to the court a list of the entities to whom money was owed, and the court read the contents of this list aloud:

> THE COURT: Well, it looks like $207 to Eastern Radiology, $5,112.30 to Pitt Memorial Hospital, $1,411 to East Care Helicopter, $770 to East Carolina School of Medicine, $3,457.99 to Wayne Memorial Hospital, and $298 to Wayne County Radiology. It looks like a total here of $11,256.29.

The court immediately asked counsel for defendant whether he had "anything to say" about these items, and counsel replied that he did not. The court proceeded to recommend that defendant make restitution to the same entities and in the same amounts listed above, as a condition of post release supervision. This restitution recommendation was entered on defendant's judgment and commitment for assault with a deadly weapon inflicting serious injury. At no time prior to the trial court's entry of the recommendation did defendant's counsel object to it.

To preserve a question for appellate review, a party must present the trial court with a timely objection or motion, stating the specific grounds for the ruling the party desired the court to make. N.C.R. App. P. 10(b)(1). This Court may, in its discretion, waive the party's failure to do so pursuant to Rule 2 of the Rules of Appellate Procedure.

The prosecutor's request for restitution and the judge's recitation of the contents of that request were both made in open court, in the presence of defendant's counsel. It was announced precisely to whom restitution was to be paid and in precisely what amounts. The

trial court specifically asked counsel for defendant if he had anything to say about the request for restitution, and he did not. Under these circumstances, defendant has failed to preserve the restitution issue for appeal, and we decline to address defendant's objection on the merits.

No error.

Judges JOHN and SMITH concur.